## JUSTIS F. DRESSER v. JOHN W. WOOD.

1. SUMMONS AND SERVICE; *What, and How Made.* The service of a summons is sufficient if it "be by delivering a copy of the summons to the defendant personally;" and the copy-summons is sufficient if said copy contain everything put in the summons or on it by the clerk. It is not necessary in such a case that the copy should be *certified,* or that it should contain any indorsement put on the summons by the sheriff.

2. ———— *Second, or Subsequent Service.* Where service of summons is made on the defendant, and afterward the plaintiff procures a second service to be made, the procuring of this second sevice is not so far an invalidation or waiver of the first service as to allow parties or third persons to treat it as a nullity.

3. ———— *Finding, as to Service.* Where an action is commenced against five persons; including W., and service is made on W., both personally and by publication, and the court in rendering judgment finds that personal service was made on two of the defendants, and service by publication on the other three, including W., and does not even mention the personal service made on W., *held,* that such finding is not an adjudication that personal service was not made on W.; and such finding does not invalidate the said personal service made on W., and especially it does not where the court had previously in effect on a motion to set aside such personal service declared that it was valid.

4. LIS PENDENS; *Partners; Service on one Partner only.* Where an action is brought against all the members of a copartnership-firm concerning a partnership matter, and one of the members of such firm is served with summons, the action is actually pending from that time against such member, and a *lis pendens* is thereby and at that time sufficiently created, so that no third person can purchase any interest in the subject-matter of the action so as to defeat or affect any right of the plaintiff in the action.

5. ———— And where a *lis pendens* is once actually created by the service of a summons on one of the members of a copartnership-firm, and a third person, in violation thereof, but without actual knowledge of its existence, purchases the subject-matter of the action, a subsequent failure on the part of the plaintiff in the action to commence to get service on the other members of the firm for sixty-three days from the time of filing the petition in the case will not destroy the force or effect of said *lis pendens* as to said purchaser.

6. AGENT; ATTORNEY; *Commencement of Action without Authority; Ratification.* Where an action is commenced by an attorney-at-law with-

out the knowledge or consent of the plaintiff, the plaintiff may afterward ratify the same, and thereafter be entitled to all its benefits.

7. DEFENSE; *Knowledge of Former Judgment; Lis Pendens.* Where an answer sets forth the rendition of a judgment in another action against the plaintiff's vendors, and states that the subject-matter of that action and of this had not been transferred to the plaintiff in this action up to and after the rendition of such judgment, said answer states facts sufficient to authorize the defendant to show that the said subject-matter had not been transferred when that action was commenced, and therefore that a *lis pendens* existed when the said transfer was actually made; and especially is this so, where no objection was made to such being shown under the pleadings in the court below.

### Error from Jefferson District Court.

Two MORTGAGES on the same tract of land lying in Jefferson county were executed by John Branscom and wife, the owners—one to *John W. Wood,* for $2,750, dated October 11th 1867; the other, to Warner, Mowry & Hawkins, copartners, for $4,348, dated October 31st 1871. In the mortgage to *Wood,* the land was described as the "S.W.$\frac{1}{4}$ of Section 12, Township 11, of Range 17," etc. In the mortgage to Warner, Mowry & Hawkins, it was described as the "S.W.$\frac{1}{4}$ of survey 12, of the lands known as the Kaw half-breed Indian lands," etc. On the 4th of November 1871, an action for *Wood,* and in his name, to reform his mortgage, in which action the mortgagors, and said W., M. & H. the second mortgagees, were made defendants. Twenty-three days afterward, November 27th, said W., M. & H. assigned their mortgage to *Dresser.* Judgment in the action above-mentioned, reforming the mortgage to *Wood,* was given and entered May 24th 1873. Said decree contains the following:

"And it is further ordered, adjudged and decreed, that said mortgage-deed be held to be a prior lien to the mortgage-deed mentioned in plaintiff's petition from John Branscom and Martha A. Branscom to the defendants Warner, Mowry & Hawkins, which mortgage was recorded in the office of the register of deeds in and for said county of Jefferson on the 4th day of November 1871; and that said mortgage-deed

from said John Branscom and Martha A. Branscom to *John W. Wood*, as reformed, be held to be a lien on the S.W.¼ of survey 12 of the Kaw half-breed Indian lands aforesaid, prior to every lien whatever, of every kind and description, of the said defendants Warner, Mowry & Hawkins, or either of them."

*Dresser*, on the 30th of September 1872, brought his action to foreclose said mortgage given to said W., M. & H., and by them assigned to him. He made the mortgagors and *Wood* defendants. *Wood* answered, alleging the prior mortgage to himself, the mistake, the action to reform, and decree reforming the same, (attaching to his answer said mortgage, and a transcript of the record, as exhibits.) His answer also contained these averments —

"That all the time prior to, and at the time of rendition of, said judgment and decree, said Warner, Mowry & Hawkins were the owners and holders of said note and mortgage mentioned in plaintiff (*Dresser's*) petition, and still are the real owners and holders of said note and mortgage; and the plaintiff herein has not now, and never has had, any title or interest in or to the same. The plaintiff herein has all the time since the date of the note and mortgage mentioned in plaintiff's petition had actual notice of all the matters and things stated in this answer."

*Dresser* replied, a general denial. The action tried at the November Term 1873 of the district court, without a jury, A. L. W., judge *pro tem.*, presiding. The real controversy was between *Dresser* and *Wood*, as to the priority of their mortgage-liens, and the question was, whether *Dresser* was an innocent purchaser and assignee for value, and without notice, of the W., M. & H. mortgage, or whether he took said mortgage with such notice, actual or constructive, as subjected him to all the equities existing between *Wood* and said W., M. & H. at the time of his purchase. The district court found in favor of *Wood* on this question; and finding that there was due defendant *Wood* on his mortgage and notes the sum of $4,408, and that there was due to plaintiff *Dresser* on his mortgage and notes the sum of $4,813, decided "that the amount so found due to defendant *Wood* is a first lien on said

premises, and is prior to any lien of said plaintiff thereon," and rendered a decree accordingly. From this decision and decree *Dresser* appeals, and brings the case here on error.

*Riggs, Nevison & Simpson,* and *Charles Dunham,* for plaintiff:

No oral evidence was given on the trial in the court below. This court therefore examines the case as though it were an original one, and the presumption that the decision of the subordinate court is correct, will not be indulged. 7 Kas. 297, 316; 8 Ind. 403; 39 Ind. 38; 10 Kas. 250.

1. The evidence clearly shows that Dresser was an innocent purchaser, for full value. Upon this point there is no contradictory evidence. Nor was Dresser affected by constructive notice arising from the registry of the Wood mortgage, for that mortgage could more properly be referred to another parcel of land than the one in dispute. The court will take judicial notice of the boundaries of counties, and of the government surveys, and of the fact that the land described in the original mortgage to Wood, (the southwest quarter of Section 12, Township 11, Range 17,) is situate in Jefferson county. The Wood mortgage, therefore, properly described another parcel than the one in dispute, and situate in another portion of the township. It does not correctly describe the land in controversy, nor would any one suspect that it covered the land embraced in the Dresser mortgage.

It should be remembered that Wood was negligent and dilatory in the prosecution of his suit to reform. More than sixty days elapsed, after the filing of his petition, before service was commenced by publication. Whatever *might* have been his equitable claim to the consideration of the court, had he shown due diligence, has been forfeited by his negligence. He was negligent in taking a mortgage containing a misdescription, and he was negligent in not proceeding to obtain service by publication immediately after the commencement of his action, and is not entitled to relief. 1 Story's Eq. Jur. §§ 146, 147.

2. Defendant in error insists that even if Dresser were igno-

rant of the existence of the Wood mortgage, he is yet bound by the judgment rendered in the action entitled "Wood vs. Warner, et al." That this position is untenable, will appear from the following considerations: Wood, in his answer in the present action, does not allege that the suit of Wood v. Warner, et al., was pending at the time when Dresser claimed to have bought the mortgage from W., M. & H., nor does he state when that action was commenced. The issue, whether Dresser purchased pending the Wood suit, was not presented by the pleadings. It is true, evidence was given by both parties, to determine whether the Wood judgment was rendered pursuant to a valid service, but no evidence was offered to show that a suit was pending when Dresser bought, because the pleadings did not contain any such allegation. It is true some evidence was given which might have related to that issue, had such an issue been presented by the pleadings. But as the pleadings stand, that evidence must all be referred to the issue before the court, viz., was the judgment in favor of Wood against W., M. & H. and the Branscoms, grounded on a sufficient service? It is too late to invent a new issue to which to refer this evidence. We could not object to the evidence in the court below, for it was properly given to support the Wood judgment, of which judgment Wood in his answer alleges that Dresser had actual knowledge. Had it been offered for the purpose of proving a *lis pendens*, we could have properly objected to it, for the existence of a *lis pendens* was not alleged in the pleadings in the case.

3. Even admitting that the issue of *lis pendens* had been presented and tried in the court below, (which was manifestly not the case,) we insist that no evidence was given that shows that at the time Dresser purchased the mortgage in dispute, any action was pending affecting said mortgage, or the rights of Dresser under the same. The service upon Warner was void, as the copy served by the special deputy was not a complete copy. The indorsement on a writ is a part of the writ. When a suit is brought to recover money only, it has always been held that the amount to be recovered must be indorsed

on the copy, as well as on the original summons.  A service
of a copy without such indorsement would be no service.  By
parity of reasoning, the authority of the special deputy, being
required to be indorsed on the summons, should also appear
upon the copy.  Whatever the law requires to be written upon
the summons is a part of the summons.  The special deputy
has the same right to omit one indorsement as another.
(3 Chitty's Prac. 266.)  The defendant is supposed to know
the sheriff and his general deputy.  Their authority appears
of record in the proper office.  But no record seems to ac-
quaint the defendant with the nature of the special deputy's
authority.  The authority does not appear upon the copy.
That copy does not even apprise him that the person who de-
livered it claimed to be a special deputy.  He may have been
a mere volunteer.

The paper served did not even purport to be a copy.  The
well-known custom, in serving writs, is, for the officer who
holds the original summons to certify on the copy delivered
to the defendant, that the same is a true copy.  This custom
we believe to be universal, and we claim that the legislature
must have had this universal custom in view when it enacted
that the sheriff should furnish the defendant with a copy of
the writ.  Indeed, a universal custom is itself law, and does
not become more obligatory from being incorporated into a
statute.  It does not comport with the dignity of courts of
record that its processes as served should be unauthenticated,
and have no voucher for their genuineness.  In the present
case the copy was uncertified.  It is true, after the return-day
has passed, the defendant, by making a trip to the county-seat
and examining the records of the court, may ascertain
whether the ambiguous transaction was a farce or a re-
ality; but we do not believe it is the intention of the
law that he should be subjected to this hardship and
delay.  Processes of courts should prove themselves.  The
same is true of copies of such processes, designed to subject
citizens to the jurisdiction and judgment of courts.  The
seal of the court and the signature of the clerk is a sufficient

authentication of the original writ; nothing less than the signature of the sheriff can authenticate the copy. A copy made by a person other than the lawful custodian of the original, might be a correct transcript indeed, but it would not give the court jurisdiction, nor authorize the taking a default against a defendant. To. have such an effect, the process must have been served by a person known to the defendant to be an officer of the court, and must have been certified by such officer to be a true copy. To hold other-. wise would be to establish a dangerous precedent. Whenever the law requires a written notice to be given, it has always been held that the person required to give the notice should sign the same. It is not a notice *in writing*, unless signed. A summons is a command of the court, addressed to the sheriff. The copy of the summons delivered to the defendant, is a notice given by the sheriff, and should be signed by the sheriff. It is an oral notice from the sheriff, and not a written one, until certified by him. Suppose such a transcript of a summons, uncertified, and wanting the indorsement of the sheriff's authority to his special deputy, should be left at a defendant's residence, by a person other than the sheriff or his general deputy: would it be claimed for a moment that a default could be entered without further service?

4. Warner, Hawkins & Mowry were joint mortgagees. Their estate was a joint one. (1 Washb. on Real Prop. 576; 2 id. 136.) In actions affecting this joint estate they were all necessary parties, and must have sued and been sued together. 1 Washb. 557; 2 Hilliard on Mort. 140; 3 Blackf. 403; 4 Kent Com. 407. And a judgment against several joint defendants is considered a nullity, when it appears that one of them was never served with process. (Freeman on Judgments, § 136; 5 Wend. 161; 55 Me. 252; Powell on Appel. Proc. 285; 6 Pick. 246; Nash's Pl. & Prac. 675, 4th ed.) It is claimed that Dresser acquired his title *pendente lite*, and that he is therefore bound by the decree in the action entitled Wood v. Warner, et al., in which it was sought to settle the

priorities between the Dresser mortgage and the Wood mortgage. But it will be noticed that the judgment in said action was given pursuant to a publication summons, which was commenced more than sixty days after the filing of the petition. We are content that Dresser should be bound by any judgment which the court could have rendered pursuant to any service made or attempted, or any publication commenced within sixty days from the filing of the petition. No judgment could have been rendered affecting the joint estates of Mowry, Hawkins & Warner, because there was an actual service of process on none of them, and even the pretended service was made on but one. According to the authorities already quoted, the judgment rendered pursuant to such a service must have been a nullity. If a judgment had been rendered against Warner alone, it would have been void, not merely because the attempted service was void, but because a joint estate could not be affected by a several judgment against one of the joint tenants. If the judgment had been against the three joint tenants, it would have been void, because no service of process had been ever attempted on two of the joint tenants.

5. Our code, § 81, provides that notice of *lis pendens* shall date from the filing of the petition only where the summons is served, or the first publication made, within sixty days after the filing of such petition. In the case of Wood v. Warner, et al., the service had been made upon the Branscoms, and an attempt had been made to serve Warner, but it was not sufficient to affect the joint mortgage estate of W., M. & H. That estate Dresser had a right to purchase, for it was unaffected by anything done or attempted to be done in the district court at the time of the purchase, by Dresser, or within sixty days from the filing of the petition. No service had been made or commenced upon which a decree could be rendered that should affect the joint mortgage estate.

Sec. 20 of the code provides that *for the purposes of the tatute of limitations,* an action shall be deemed commenced as

to defendants jointly interested, as soon as service is had upon one. This provision being expressly limited to statutes of limitation, it follows that the converse is true, when the question is one of *lis pendens*, and that the writ is *not* pending as to any defendant unless service on such defendant is made or commenced within sixty days from the filing of the petition.

6. The attempted service on Warner was clearly waived by Wood, when he made affidavit that service could not be made on Warner in this state, and proceeded to serve by publication. Warner clearly had until the answer-day mentioned in the publication-notice in which to answer Wood's petition. It follows that Wood waived his rights, such as they were, under the attempted personal service on Warner. If there were any dispute about this, there is the final adjudication of the court, that the judgment in Wood's favor against Warner, Mowry & Hawkins was rendered pursuant to the publication-notice. This adjudication is binding, and cannot be questioned until set aside by the proper tribunal. Certainly, a party counting on a judgment cannot be allowed to controvert one of the points decided in the action, nor to deny one of the findings contained in the judgment. We have not overlooked the fact that the motion made by Warner to quash the summons, and set aside the return of service, was overruled. The action of the court in this matter was clearly proper, for there was no ground for quashing the summons, the said summons being regular, and the motion was not divisible. But when the court afterward rendered judgment in the case, it passed upon the question of service, and found that the personal service was had on the Branscombs, and that service by publication was made upon W., M. & H., which service the court approved. This is a distinct adjudication that the attempted personal service on Warner was void.

7. The Wood suit was commenced at the instance of Branscom. It was not properly a suit until Wood consented that it should be brought. Wood, who resides in Missouri,

gave that consent "some days" after the commencement of the action. But it is not proved to have been given before the date of Dresser's purchase, and there being no testimony on that point, there is no evidence nor presumption that the assent was given before the Dresser purchase.

*Keeler & Johnson,* for defendant:

1. Personal service of summons in the case of Wood v. Branscom, et al., was duly made upon Warner on the 4th of November. It was served by a duly-authorized special deputy sheriff, and the copy delivered to Warner was a true copy of the summons issued by the clerk. The indorsement thereon by the sheriff of the appointment of Newhouse to serve it, was no part of the summons. Whatever the clerk puts in it, or indorses on it, and that only, is a part of the summons. There is neither reason nor propriety in putting any subsequent indorsement of the sheriff on the copy delivered to a defendant. Strictly and technically it would not be a true copy of the summons *issued,* if added to and changed in that manner. If the letter of the statute has been complied with in making a service, the defendant's ignorance of what has been or is thereafter done in the case, does not let him out of court. He has the certain means of knowing, and fails to use them at his own peril. No certificate of the deputy sheriff was necessary on the copy served. The code, § 64, says, "The service shall be by delivering a copy." If the legislature had thereby meant a *certified* copy, it would have been so expressed, because in another place where it did so mean it said so in the statute. (Justices act, § 12.) In all revisions of the code the requirement of such certificate has been inserted in the justices act, with reference to constables, and omitted from the general code with reference to sheriffs. It is unnecessary to give the reasons for this distinction. It is enough that it is so written. The expression of the requirement in the one section conclusively excludes it in the other section where it is not expressed.

2. The personal service on Warner was not invalidated

nor waived by any subsequent proceedings in the case. Warner moved to set aside said service. His motion was by the court overruled, and the service held to be good. The case of *Stevens v. Thompson*, 5 Kas. 305, is in point. Upon the filing of an amended petition, a second summons was issued, and a second service made, and this court held that such second service cut no figure, not even as to the time and manner of pleading — that the first service being sufficient, the second summons had no function to perform. Now here there was no waiver by Wood of the personal service on Warner, nor was there any adjudication of the court against it. Warner, with other defendants, actually appeared in the action by filing an answer to Wood's petition. The court found the service by publication to be good, and that by it W., M. & H. were duly notified of the pendency of this action. Can it be contended that the judgment in that case now depends for its validity on the regularity of that service by publication, and that their personal appearance by filing answer cuts no figure — that the court, by its findings as to service by publication adjudicated their appearance by answer out of existence? That position is just as tenable as that the personal service on Warner was (without being referred to) thereby adjudicated away.

3. Wood's action to reform his mortgage was commenced Nov. 4th, and on the same day personal service was made on the two Branscoms and Warner, three of the defendants, and on the 6th of January service by publication was commenced on Mowry and Hawkins, the remaining defendants. Dresser made his purchase of the Warner, Mowry & Hawkins note Nov. 27th. Under § 81 of the code, by the purchase at that time Dresser acquired no interest in or lien on the mortgaged premises as against Wood, and Dresser was bound by the decree afterward made in the action then pending. (*Bayer v. Cockrill*, 3 Kas. 282.) Said § 81 contains two distinct provisions. The first is, that the filing of the petition is notice to the world ("third persons") of the pendency of the action, but that such notice shall not be of any avail if a service be

not made within sixty days thereunder. This is not such a question as could arise under the statute of limitations. The second provision is, that while an action is pending " no interest can be acquired by third persons in the subject-matter thereof as against the plaintiff's title." It does not say merely that no interest can then be acquired *from a defendant in the action.* Its meaning is not so limited. An interest as against the plaintiff's title, cannot be acquired from any person. In this case Dresser made his purchase from defendants in the action of " Wood v. Branscom, et al. ; " and one of the defendants from whom his purchase was made had already been served with a summons in the action. The ownership of Dresser's vendors being a joint one, and the purchase being a single and invisible transaction, he could not thereby acquire any interest as against the plaintiff's title, even if he might have done so by a purchase of that which was owned solely by the two defendants not then served. The interest of Warner in each and every cent of the mortgage-lien gives to Dresser's purchase the same bearing on this case as though made from Warner alone. As this is not a direct proceeding to set aside the decree made in the case of Wood v. Branscom, et al., the authorities cited by plaintiff in error have little or no bearing on this case. In the case of Wood v. Branscom, et al., Wood sued all the joint-owners, and eventually obtained service on all, and a decree against all, which decree is still in force.

4. Inasmuch as Wood ratified and accepted the attorneys' acts in bringing an action for him as soon as he was apprised of them, the action so brought must be treated in all respects as though originally brought at his direction. Such ratification was made long before Dresser's purchase. The expression "some days after" the filing of the petition, excludes the idea of its being some *weeks* after.

5. The plaintiff in error in his brief assumes that Wood was negligent. There is no evidence in the case tending to show that Wood or his attorneys knew or could ascertain the facts necessary to be inserted in an affidavit for publication

prior to the time the affidavit was made. As the question of diligence in making that service by publication is no material element in the case, it is but fair to presume that Wood might have proved diligent inquiry and want of knowledge, if such testimony had been proper and admissible.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by Dresser against John Branscom, Martha Branscom, and John W. Wood, to foreclose a certain mortgage. The real contest however is between Dresser and Wood. Each is the owner of a mortgage given by the Branscoms upon the same land, and each claims priority of lien. Wood's mortgage was executed first; but as a mistake was made in describing the mortgaged property, Dresser's mortgage would seem to take precedence. Dresser's mortgage was executed originally by the Branscoms to Warner, Mowry & Hawkins, partners in business, and was by them assigned to the plaintiff Dresser. Immediately after the Dresser mortgage was executed, and while it still remained in the hands of Warner, Mowry & Hawkins, to-wit, on November 4th 1871, Keeler & Johnson, as attorneys-at-law, commenced an action in the name of Wood, but without his knowledge or consent, against the Branscoms, and against Warner, Mowry & Hawkins, to obtain a decree reforming the Wood mortgage, and making it the prior lien on the mortgaged property. The Branscoms were duly served with summons. Warner was also served

1. Service of summons; how made; sufficiency.

with summons, but it is claimed by Dresser that the service was void, and this is the first question raised in the case. The service was not made by the sheriff in person. But he deputized a person by the name of S. Newhouse to serve the same. The authority was indorsed on the summons in accordance with § 63 of the code, (Gen. Stat. 642,) in the following words, to-wit: "I hereby deputize S. Newhouse to serve this summons.— E. T. ELLIS, Sheriff." Newhouse served the summons on Warner on the same day, November 4th, by delivering to him a copy of the

summons with all the indorsements thereon, except the fore-
going indorsement of authority to Newhouse to serve the
summons. The copy delivered to Warner was not in any
manner certified to be a copy. It is claimed by Dresser that
the service of the summons was void because said copy was
not certified, and because said indorsement was omitted there-
from. Now neither, as we think, was necessary. The statute
provides that, "The service shall be by delivering a copy of
the summons to the defendant personally," etc. (Civil Code,

Copy need not     § 64.) The statute does not require that a *certi-*
be certified.
What indorse-  *fied* copy of the summons shall be delivered to
ments are
required.      . the defendant, nor does it require that a copy
of anything more than the *summons* shall be delivered to
him. The summons is the writ, as it is issued by the clerk.
(Code, § 59.) It does not need anything more than what
the clerk puts in it, or on it, to make it a summons; and
anything more is no part of the summons. Taking the
statute as it reads, and these propositions seem clear beyond
all doubt. And we know of no reason why we should not
take the statute as it reads. This service then, on Warner,
was a good service, and gave Warner notice of all the rights
of Wood. And as a rule, notice to any one of two or more
persons interested jointly as partners, is notice to all. The
action from and after November 4th was actually pending as

2. Second ser-   to the Branscoms, and as to Warner. After-
vice. Publi-
cation.        ward Wood filed an affidavit for service by
publication, and actually got service by publication, not only
upon Mowry and Hawkins, but also upon Warner. It is
claimed by Dresser that this second service on Warner inval-
idated the first, or was at least a waiver of the first. We do
not think the claim is tenable. (*Stevens v. Thompson,* 5 Kas.
305.) Afterward the defendants Warner, Mowry & Haw-
kins appeared in the case, filing an answer denying generally
all the allegations of the plaintiff's petition. Afterward,
when the case was called for trial the defendants Warner,
Mowry & Hawkins did not appear. The court then found
that personal service had been made on the Branscombs, and

Dresser v. Wood.

**3. Finding of court, as to service.** that service by publication had been made on the other defendants, Warner, Mowry & Hawkins, and did not mention the personal service made on Warner. The court then proceeded to hear the case, and rendered judgment as prayed for by plaintiff Wood. It is now claimed by Dresser that said finding of the court, that service by publication had been made on Warner, and not mentioning the personal service made on him, was an adjudication by the court that such personal service had never been made, or that the supposed personal service should be set aside. The claim is not tenable. Besides, Warner once made a direct motion to the court to set aside the personal service made on him, and the court overruled the motion. And it was not overruled, as the plaintiff in error now intimates, merely because it was connected with a motion to quash the summons, but it was overruled, as the record clearly shows, because the court considered the service good. And further, if the court adjudicated the personal service on Warner out of existence, without even mentioning it, did not the court also adjudicate the appearance of Warner, Mowry & Hawkins out of existence? This latter will hardly be claimed.

The petition was filed, and service made on the Branscoms and Warner, on November 4th 1871. The mortgage **4. Lis pendens. Service on one partner only.** was assigned by Warner, Mowry & Hawkins to Dresser on November 27th, Dresser having no actual notice of the commencement of the action, or of Wood's rights or claims. And service was not commenced to be made on the other two defendants, Mowry and Hawkins, until January 6th 1872. Hence, more than sixty days had elapsed after the filing of the petition, and before service was commenced to be made on Mowry and Hawkins, and hence the *lis pendens* provided for by § 81 of the code, (Gen. Stat. 645,) could not operate as against a purchaser from Mowry and Hawkins, provided they had owned the entire property in the thing transferred. But they did not own the entire property in the thing transferred. They, with Warner, owned the

property jointly, as copartners. And Warner had been served with summons, and the action had been actually pending as against him for twenty-three days when the mortgage was assigned to Dresser. But it is claimed by Dresser, that as the mortgage was held jointly, and not in severalty, by Warner, Mowry & Hawkins, no judgment could be rendered against all or any of them upon a service made on Warner alone; and therefore, that no *lis pendens* could have existed when Dresser purchased the mortgage from Warner, Mowry & Hawkins. Now for the purposes of this case we shall admit that no final judgment reforming the Wood mortgage as against them could have been rendered against Warner, Mowry & Hawkins, or against either of them, on the service made on Warner alone; but we do not think that it follows from this fact that no *lis pendens* could exist at the time when Dresser purchased the mortgage from Warner, Mowry & Hawkins, under which he claims priority. The service on Warner was unquestionably valid, so far as the question we are now considering is concerned. Indeed, there is no way, under our laws, by which a service of summons can be made Service on partnership firms. on a copartnership-firm except by making the service on each individual member of the firm. And from the time that each individual member of the firm is so served, the action stands actually pending against such member. If the service were void as to each member, when served, it would evidently be void as to all of them when served, which cannot be admitted. But as the service is valid as to each member when served, it would seem to be clear beyond all doubt that no person could purchase or obtain any interest in the subject-matter of the action from such member, when so served, so as to defeat or affect any right of the plaintiff in the action in which such service was made. But to purchase anything from one of the members of a copartnership-firm, is to purchase it from every member of the firm. For instance, take the present case. Warner's interest in the mortgage extended to every conceivable or inconceivable portion of the mortgage. No portion of the

mortgage could be purchased without purchasing a portion of Warner's interest therein. And as each and every partner who has any authority to make a sale of any portion of the partnership property, is, in fact and in law, an agent for that purpose for each and all of the other members of the firm, a purchase from such member, who is an agent, is a purchase from each and all of the other members who are principals. Therefore, a purchase from Mowry, or Hawkins, or both, would be a purchase from Warner. And therefore we think it follows from the foregoing premises, that whenever any member of a copartnership-firm is served with a summons, a *lis pendens* is at once created to such an extent that no person can purchase from any member of the firm any portion of the subject-matter of the action so as to affect the rights of the plaintiff in the action. It would be unfortunate if such were not the law. If such were not the law, as soon as one member of a firm were served with summons, the other members might sell the subject-matter of the action to an innocent purchaser, just as was done in this case, and then, if for any reason service should not be personally made or commenced by publication on every other member of the firm within sixty days after filing the petition, any judgment that might thereafter be rendered might be wholly unavailing and ineffectual for the purpose of protecting or enforcing the rights of the plaintiff therein. And further: if it be true, that no judgment could have been rendered against Warner after he was served with summons, except upon the contingency that both the other members of the firm should also be served with summons, still it is no more true than that no judgment could be rendered against any or all of them except upon the happening of several other contingencies. Even after service is made upon all the defendants in any case, no judgment can be rendered except upon the happening of a greater or less number of contingencies. The judgment usually depends upon the evidence; and connected with the evidence, are usually many contingencies. And the last contingency is not removed until the judgment is actually

and finally rendered. It cannot therefore be maintained that every contingency that might defeat the rendering of judgment, must first be removed before a *lis pendens* can have any operation. We think a *lis pendens* was created by the service of the summons upon Warner. But it is claimed however by Dresser, that such *lis pendens* was destroyed by the subsequent failure of plaintiff Wood to commence to obtain service upon Mowry and Hawkins within sixty days after the filing of the petition. (Code, § 81.) But Dresser purchased the mortgage in twenty-three days only after the petition was filed, and while the *lis pendens* was unquestionably (so far as this question is concerned) in full force and operation. And therefore Wood's *laches*, in not commencing to obtain service on Mowry and Hawkins until sixty-three days had elapsed after the petition was filed, instead of within sixty days, as he had an undoubted right to do, could not have misled Dresser to his injury. We do not think that the three days *laches* of Wood destroyed the *lis pendens* already created and existing.

5.Laches: omission to commence proceedings for service, for sixty days.

But it is also claimed by Dresser that said action was commenced without any authority from Wood, and therefore that the proceeding could not constitute a *lis pendens*. But the record shows that "some days after said action was commenced," Wood ratified the same. How many days thereafter, is not shown. It evidently could not have been weeks however, or the record would have said "weeks," instead of saying "days." And it could not have been more than seventeen days at most, for the following reasons: On November 4th the petition was filed and service made on Warner, and the Branscoms. On November 16th Warner filed a motion to set aside the service, and quash the summons. And on November 21st, just seventeen days after the petition was filed, this motion was taken up for hearing, and Wood appeared in the court to contest the same. It is true, Wood's appearance was by counsel, but there is no pretense that this appearance was unauthorized. The court over-

6. Action commenced without authority: ratification.

24—15 KAS.

ruled the motion. Now, by way of digression, was not this an adjudication by the court that the service on Warner was good? And the court had jurisdiction both of the subject-matter of the motion, and of Warner, who made the motion. That is, the court had jurisdiction of Warner for the purpose of adjudicating upon this motion, for Warner voluntarily appeared for this purpose, and gave the court such jurisdiction. Warner excepted to the decision of the court upon this motion, and made a case for the supreme court. This decision was made on November 21st, and in six days thereafter, on November 27th, the mortgage was assigned by Mowry and Hawkins to Dresser. We suppose that no one will question the power of Wood to ratify and make his own whatever said attorneys had done for him in the way of bringing said suit. And we suppose no one will question the binding effect of the suit after its ratification. The suit was ratified by Wood before the mortgage was transferred to Dresser; and Warner, one of the mortgagees, well knew of the ratification; for only six days before the assignment was made he had had the contest with Wood over the service of the summons.

Dresser also claims that Wood did not sufficiently plead in this action the *lis pendens* of the other action. He set forth in this action in his answer to Dresser's petition the rendition of the judgment in the other action. He also sets forth in his answer that at all times up to the rendition of said judgment, and since, Warner, Mowry & Hawkins were the owners of the Dresser mortgage. These facts, if true, certainly constitute a good *lis pendens*. Indeed, it is not necessary that they should all be true, or wholly true, in order to constitute a good *lis pendens*. Suppose, for instance, that instead of Warner, Mowry & Hawkins owning the mortgage up to and after the rendition of the judgment, as pleaded, they merely owned it up to and after the time when the suit was actually pending against Warner, as was the fact, still the *lis pendens* would be sufficient. We think the answer was sufficient. And besides, all the parties tried the case on the assumption

7. Pleading defense; knowledge of former judgment.

that the question of whether a *lis pendens* existed or not, was properly raised by the pleadings in the case; and therefore, even if it should now be found that any one of the pleadings was technically defective in this respect, still we should not reverse the judgment of the court below merely for that reason. Parties must generally raise such questions before they come to this court. If any objection had been made in the court below, the pleadings would undoubtedly have been made sufficient if they were not already sufficient.

The judgment of the court below is affirmed.

All the Justices concurring.