THE GIRARD TRUST COMPANY, *as Trustee, etc., Appellee,* v. THOMAS OWEN, JR., *Appellant.*

No. 16,770.

SYLLABUS BY THE COURT.

1. PRACTICE, SUPREME COURT—*Case-made—Time of Service— Certificate of Trial Judge.* Where there is conflicting testimony in this court as to whether a case-made was served before the expiration of the time allowed, the certificate of the trial judge that the service was made in due time will control.

2. LIMITATION OF ACTIONS — *Suspension of the Statute.* The payee of a note who has assigned it as collateral security has still such an interest therein that a written acknowledgment

Trust Co. v. Owen.

made to him by the debtor may serve to toll the statute of limitations.

3. ——— *Same.* In virtue of the statute (Gen. Stat. 1909, §§ 5214, 5215) making payments to the record owner of a mortgage binding upon the real owner, a part payment to a mortgagee who has made an unrecorded assignment is sufficient to toll the statute of limitations.

4. CONTRACTS—*Accord and Satisfaction—Extension Agreement —Performance.* Where the parties to an overdue note enter into a written agreement, founded upon a sufficient consideration, by the terms of which a part of the debt is forgiven and the time for paying the reduced amount is extended, a provision therein that a default in the payment of the interest shall mature the new principal implies that the debtor is not to forfeit the benefit of the reduction by a failure to meet promptly the terms of the readjustment.

Appeal from Cheyenne district court. Opinion filed January 7, 1911. Modified.

*J. L. Finley,* and *Wheeler & Switzer,* for the appellant.

*Justin D. Bowersock,* and *Lester W. Hall,* for the appellee.

The opinion of the court was delivered by

MASON, J.: The Girard Trust Company, trustee, obtained judgment against Thomas Owen upon a note and mortgage, and he appeals.

A preliminary question is presented by a motion to dismiss on the ground that the case-made was not served in time. The judgment was rendered December 8, 1908, and the time then allowed for serving a case expired April 7, 1909. A written acknowledgment of service recited that it was made April 8, and affidavits have been filed here stating such to be the fact. On the other hand, the defendant presents affidavits that service was made at an earlier date. The certificate of the trial judge, made at the time of settlement (May 25, 1909), includes a recital that the case-made

had been served in due time. This is not ordinarily conclusive (*Gimbel v. Turner,* 36 Kan. 679), but it is competent evidence (*Jones v. Kellogg,* 51 Kan. 263, 271, 272). It amounts to a finding made at a hearing of which the adverse party had notice, and will be regarded in this instance as controlling, inasmuch as the conflict of testimony would otherwise leave the fact in doubt. The justice of this solution of the controversy is especially obvious because, if the trial judge had found that the case-made had been served too late, the defendant would still have had abundant time within which to institute an appeal under the new code.

The note sued on was due June 1, 1892. The action was begun April 2, 1907. To toll the statute of limitations the plaintiff relies upon a written acknowledgment in the form of an extension agreement signed June 20, 1901, and upon a payment of interest found to have been made May 27, 1902. The defendant maintains that the acknowledgment and the payment were of no effect because neither was made to the owner of the note. The note and mortgage were made payable to Thomas Frahm, who was the cashier of the McKinley-Lanning Loan and Trust Company, to which he shortly transferred them. According to the evidence they were then turned over to the plaintiff as collateral security. While the plaintiff held them the defendant signed an extension agreement acknowledging the indebtedness, which was described as owned by the McKinley-Lanning Loan and Trust Company. This written agreement was brought about by, and was delivered to, W. H. Lanning, who was the agent of Frahm and the McKinley-Lanning company, but not of the plaintiff, so far as the record shows. The subsequent payment was likewise made to him.

In *Investment Co. v. Bergthold,* 60 Kan. 813, it was held that a written acknowledgment incorporated in an extension agreement made with the payee after the assignment of the note does not interrupt the running

of the statute. In that case, however, no suggestion seems to have been made regarding the effect of a subsequent adoption by the owner of the acts done by one having no authority at the time to represent him. Possibly the ratification might operate retrospectively by relation. (See, as having some bearing upon this phase of the matter: *Dresser v. Wood,* 15 Kan. 344; *Service v. Bank,* 62 Kan. 857; *Haines v. Watts,* 53 N. J. Law, 455; 31 Cyc. 1283, 1290.) The case of *Moore v. Roper,* 35 Can. Supr. Ct. Rep. 533, tends to the contrary. In volume 19 of the American and English Encyclopædia of Law it is said that "an acknowledgment made to the assignee [obviously a misprint for assignor] after the assignment is of no effect." (p. 318.) Of the two cases cited in support of this text, one (*Maxwell v. Reilly,* 79 Tenn. 307) holds that after the death of the owner of a note an acknowledgment made to his widow does not inure to the benefit of an administrator subsequently appointed. The widow claimed to own the note by gift, and the decision was based upon that fact. In the other case (*Stamford, Spalding and Boston Banking Co. v. Smith,* L. R. [1892] 1 Q. B. Div. 765), a payment made to a former owner of the note was held not to suspend the statute because the giving of money to a stranger was not a payment upon the note. The principle of ratification was suggested, and might have been applied, but it happened that the adoption of one payment would have involved recognizing enough others to have wiped out the debt.

In the present case the acknowledgment was sufficient irrespective of the effect of a subsequent ratification. Although the Lanning-McKinley company, to whose agent the acknowledgment was made, had previously transferred the note and mortgage, the evidence shows that the transfer was for security. By such a transfer the company lost the right of collection and control, but did not part with all interest in the

claim. It was entitled to any surplus over the amount secured, and was itself liable for any deficiency. It had a substantial interest in the payment of the note, and can not be regarded as a stranger to it. The cases holding that an acknowledgment made to a stranger is without effect have no application to such a situation. This readily appears from an examination of collections in 25 Cyc. 1362 and 19 A. & E. Encycl. of L. 316, and notes in 102 Am. St. Rep. 754, and in 5 A. & E. Ann. Cas. 811. In the note last cited it is said:

"If the relationship between the person to whom the acknowledgment is made and the creditor is such that they have an interest in common in the debt, or that there is privity between them, the acknowledgment will be sufficient to toll the statute." (p. 812.)

A situation somewhat analogous to that here presented arises where, upon the death of a creditor, the debtor admits the indebtedness to an heir, who has no legal title, but is interested in the payment. By the weight of authority such an acknowledgment is as effective as one made to the administrator. These cases tend to support that view: *Haines v. Watts,* 53 N. J. Law, 455; *Hodnett v. Gault,* 64 N. Y. Supr. Ct., App. Div., 163; *Hill v. Hill,* 51 S. C. 134; *Robertson v. Burrill,* 22 Ont. App. 356; *Croman v. Stull,* 119 Pa. St. 91. The following have a contrary tendency: *Visher v. Wilbur,* 5 Cal. App. 562; *Kisler v. Sanders, Administratrix,* 40 Ind. 78.

Ordinarily a part payment is effective to suspend the running of the statute only when it is made to the creditor or some one authorized to represent him. The reason has already been referred to—the giving of money to a stranger is not in fact a payment on the debt. Here, however, that reason does not apply. Owen was entitled to credit for the payment made in 1902 to Lanning, the agent of the mortgagee, because at that time no assignment of the mortgage had been recorded. The statute (Laws 1889, ch. 168, §§ 3, 4,

Gen. Stat. 1909, §§ 5214, 5215) makes payments to the record owner of a mortgage binding upon the real owner; it in effect makes the one the agent of the other for the purpose of receiving payments. As a payment made to such a statutory agent reduces the debt, it gives a new starting point for the period of limitation.

Prior to the extension agreement nothing had been paid upon the principal, which was $500. At that time a payment of $100 was made, and Owen signed a new contract which recited that the unpaid balance was $250, and provided for the payment of half of that amount in one year and the remainder in two years, interest to be paid semiannually, coupons therefor being attached. Judgment was rendered for the full amount of the original note and interest, less such payments as had actually been made. Owen maintains it should not have been for more than $250 and interest.

The question for our determination is, What contract did the parties in fact make. It was of course competent for them to agree either that the execution of the instrument relating to the extension should of itself reduce the amount of the debt, by the absolute forgiveness of a portion of it, or that such reduction should result only if the new promise to pay the less amount were fully kept. (1 Enc. L. & P. 637, 642.) A witness for the plaintiff undertook to give the transaction the latter color, but his testimony must be regarded as expressing merely his view of the legal effect of the writing signed by Owen, for he stated no facts bearing on the matter. The negotiations leading up to the signing of the new contract were conducted by correspondence, and there was no evidence as to the contents of any communication on the subject. The question must therefore be determined upon the face of that instrument.

The new contract was supported by abundant consideration. For one thing, the place of payment was

changed; and for another, Owen's wife, who had not previously been personally bound, assumed liability for the debt. The writing described the original note and mortgage, and recited that $250 of the principal remained unpaid. It contained nothing to suggest the payment under any circumstances of a larger sum than it stated to be still owing on the note. It provided, among other things, that in case of default in the payment of the interest coupons attached to it the mortgagee might declare the "said principal sum" (referring to the $250) immediately due and payable. This express provision that a failure to meet the interest promptly should mature the new principal fairly implies that the parties did not intend such a default to have a greater effect—that there was no purpose to make a delay in meeting the readjusted payments work a forfeiture of all the benefits to Owen of the readjustment.

The judgment is modified by reducing the amount to the sum due by the terms of the extension agreement.