## J. J. BREHER, Appellant, v. PHILIP HASE, Respondent.

(208 N. W. 974.)

**Vendor and purchaser — contract for purchase of land on crop payment plan; lien on crop terminates with date of termination of contract.**

1. A contract between a vendor and a purchaser of land to be paid for on the crop payment plan, which contained a stipulation subjecting the annual crops to a lien for the price and further stipulations maturing the balance of the purchase price and providing that the contract should terminate on a definite date, is construed and it is held that the contract does not provide for a lien upon a crop raised subsequent to the date of termination as fixed.

**Vendor and purchaser — evidence does not sustain allegation that there was separate contract for lien on land after termination of contract.**

2. The evidence is examined and held insufficient to show a separate contract for a lien upon a crop raised after the termination of the agreement according to its terms.

Opinion filed May 1, 1926.

Vendor and Purchaser, 39 Cyc. p. 1627 n. 75.

Appeal from the District Court of Sheridan County, *Jansonius*, J. Affirmed.

*Aloys Wartner*, for appellant.

"Where one sold to another a certain tract of land for a specified price payable in yearly instalments, the first of such instalments being due December 1, 1910, and the last being due December 1, 1913, and such contract contained a condition that, if default be made in any of the payments, then the whole of such purchase price and interest should become immediately due and payable; and default was made in the first payment,—the whole sum of such contract becomes immediately due and payable, and remained due and payable during the continuance of such default. Where such default continues, the payment due each year is not the amount specified in the contract to be payable at a certain time each year, but the whole amount of the contract is due and payable each year." Bentler v. Bryonjolfson, 38 N. D. 41, 165 N. W. 553.

*Peter A. Winter*, for respondent.

The primary rule in the construction of contracts is that the court

must, if possible, ascertain and give effect to the mutual intention of the parties, so far as that may be done without contravention of legal principles. 13 C. J. 521; 150 Pac. 1094.

Where a contract is ambiguous it will be construed most strongly against the party preparing it or employing the words concerning which doubt arises. 13 C. J. 545.

· "The purchaser of the land under a contract for deed is entitled to the crop." Moen v. Lillestall, 5 N. D. 327, 99 Pac. 578; 39 Cyc. 1627.

BIRDZELL, J. This is an appeal from a judgment in favor of the defendant in a claim and delivery action. The plaintiff claimed to be the owner of 836 bushels of wheat raised in 1924 on a certain quarter section which he had previously contracted to sell to the defendant. The defendant, on the other hand, contended that the plaintiff had no interest in or lien upon the crop seized and that he was damaged to the extent of the value thereof. The case was tried by stipulation to the judge of the district court without a jury. The questions involved depend upon the meaning to be placed upon the terms of a contract between the parties dated April 6, 1919. This contract stipulates for the purchase by the defendant from the plaintiff of the described quarter section for $4,500, as evidenced by two promissory notes in the amounts of $2,000 and $2,500, respectively, with interest at 8 per cent. The contract stipulates that the second party, the purchaser and defendant, will deliver to the first party "all of all crops raised on said real estate in each year 1919 and 1920 and one-half thereafter at Martin or such other place as may hereafter be mutually agreed upon; this contract to terminate on April 6, 1924; such delivery to be made, and the price of said grain so delivered to be fixed on or before the first day of November of each year; the price so affixed to be the market price at the time of delivery of said grain; the amount so realized to be credited on this contract, first by paying the interest due at the time of the said delivery, and the remainder to be applied upon the reduction of the principal sum then remaining unpaid, until the full amount of the principal and interest is wholly paid." There is a further stipulation that the party of the first part shall own and be entitled to the possession of all crops raised in each year and the proceeds of the same, and that the title and proceeds shall remain in him "until the full one-half share of all such

crops or the proceeds of the same have been received by the said party of the first part in each year until the aforesaid real estate is paid for in full." It is further stipulated that the balance due on the 6th of April, 1924 is to be paid in full "as it is understood that this contract will terminate on that date."

The question for determination is narrow. It is this: Under this contract does the lien on the crops for the unpaid purchase price extend to crops raised after the maturity of the contract? This question turns upon the force of the provision that the title and proceeds of crops shall remain in the vendor until he shall have received a one-half share and until the real estate shall be paid for in full, read in connection with the stipulations that the contract is to terminate on April 6, 1924, and that the balance due on April 6, 1924, is to be paid in full. There can be no doubt that these stipulations mature the contract to the extent that the purchaser is bound on that date to pay in full the remaining balance. One legal effect of such provisions would be, then, to give the vendor an immediate right to maintain an action for specific performance. In the event he should avail himself of this remedy, it is scarcely conceivable that he could successfully claim a mortgage on succeeding crops to secure a judgment for the balance due him. Another effect of the same provisions would be to put the purchaser at once in default upon nonpayment of the balance, although he might have previously performed every obligation. Being in default for failure to pay the balance on April 6, 1924, the vendor would have a right to cancel the contract, either upon giving the statutory notice or by resort to an action. In the event notice were given, the contract would not be legally canceled for six months, notwithstanding any provisions in the instrument to the contrary Chapter 151, Session Laws of 1917. In the event of its termination or cancellation in this manner, the vendor could not claim both the land and the purchase price. By foregoing the right to the purchase price, he must necessarily forego the security, which is a mere incident. The statute (applicable to cancellation by notice but not to cancellation by action) gives the purchaser six months' time in which to relieve the default and does not qualify any possessory right meanwhile. This right would be qualified by a holding that would subject a crop raised during that period to a lien for an indebtedness that right no longer be owing. Furthermore, such an inter-

pretation of the contract would enlarge the effect of the stipulations for liquidated damages and rental, which apply only the amount *paid* before cancellation and the improvements; not unpaid portions secured by crop lien. While the amount of the defendant's indebtedness is large in the instant case, the contract cannot be construed differently than as though the amount of the unpaid balance were very small in comparison with the defendant's equity. We are of the opinion that the effect of the contract stipulations for termination on April 6th is to terminate the crop payment provisions and, consequently, the stipulation for title reservation of crops until the price is fully paid.

In our opinion, it is fairly to be inferred from the whole contract that the parties at the time it was entered into contemplated that on April 6, 1924, the vendee's equity in the land would be ample security for any unpaid portion of the price and that they neither contemplated nor provided for the situation which actually arose. It is impossible to consistently construe the contract so as to give effect to the express provision that it shall terminate at a given time and at the same time give to the vendor crop security for an indefinite period thereafter.

There is some contention in the brief of the appellant to the effect that in the spring of 1924 there was an understanding between the vendor and the purchaser that they would proceed as in previous years, but, in our opinion, the evidence falls short of showing an understanding that the 1924 crop should be subject to the purchase price lien as the prior crops had been. The testimony on this subject is merely to the effect that the defendant in May, after the maturity of the contract, went to the plaintiff's bank, but there is no evidence as to any conversation that took place. In fact, the evidence is "Mr. Breher said nothing" and that the defendant went on the same as he had been doing in the prior years. We take this to mean that he seeded the land the same as he had been doing in the past. At any rate it does not appear that any understanding was reached that this crop should be subject to a lien for the purchaser's indebtedness.

The judgment is affirmed.

CHRISTIANSON, Ch. J., and NUESSLE, BURKE, and JOHNSON, JJ., concur.