JOHN F. TIMM and Lydia Timm, Respondents, v. JOHN ARVIDSON,
and
FIRST STATE BANK OF GARRISON, a Corporation, Appellant.

(227 N. W. 59.)

Opinion filed August 16, 1929. Rehearing denied October 22, 1929.

*R. L. Fraser* and *Hyland & Foster,* for appellant.

*Sinkler & Brekke,* for respondents.

Burke, Ch. J. This is an action in claim and delivery. The plaintiff seeks to recover certain grain raised upon plaintiff's land. There was a verdict and judgment for the plaintiff, from which the defendant appeals.

In June, 1920, the plaintiff, Lydia Timm, entered into a written contract with the defendant John Arvidson and Robert Mellum, by the terms of which Arvidson and Mellum agreed to farm certain lands belonging to the plaintiff in the county of McLean, during the years 1921, 1922, 1923, 1924 and 1925 commencing on the first of November, 1920, and ending November 1, 1925. Mellum dropped out of the deal, but Arvidson farmed the land during the entire term mentioned in the contract, and continued in possession and farmed the land in 1926 and 1927. The plaintiff claims the right to the possession of the defendant's share of the crop in 1927, under a provision in the contract which reads as follows:

"And until the covenants and agreements to be performed by the party of the first part shall have been fulfilled and such division made the title and possession of all hay, grain, crops, produce, stock increase, income and products raised, grown or produced on said premises shall be and remain in the party of the second part, and said party of the second part has the right to take and hold enough of the crops, stock, income, increase and products that would on division of the same belong to said party of the first part to repay any and all advances made to him by party of the second part and interest thereon at eight per cent per annum, and also to pay all indebtedness due said party of the second part by said party of the first part, if any there be."

The plaintiff claims, that the defendant is indebted to her on a promissory note executed on the same day that the written contract was exe-

cuted for $1,500 made by the defendant Arvidson, and Robert Mellum for an advancement for the purchase of stock for the said farm.

The First State Bank of Garrison claims the grain in question under a chattel mortgage.

The defendant, Arvidson, admits that he farmed the land from 1920 to 1927 inclusive, but he claims, that the farming operations were conducted each year under an oral contract, that the written contract provides, that the second party shall pay for one third of the threshing and twine bill, that the party of the first part is to furnish all the seed, and the party of the second part agreed to deliver to the party on said premises two thirds of the crop, while in truth, and in fact, under an oral agreement which he claimed to have made at the same time, the plaintiff furnished the seed each year, paid one half of the threshing bill and the crop was divided equally between them. It is undisputed that the original contract was changed in this particular, that is, that the plaintiff furnished one half the seed, paid one half the thresh bill, and each party received one half the crop on division. The defendant claims that he operated under an entirely different contract, while the plaintiff claims, that the old contract was in full force and effect in every other particular, excepting as to the furnishing of seed, threshing and the division of the crop. The defendant does not testify as to any other condition, but did testify, that he "went into possession of the land under the contract and the verbal agreement; that he remained in possession and farmed land until the fall of 1927, under that kind of an agreement. In the fall of 1925, I asked Mrs. Timm if she wanted another contract and she said, no."

The defendant admits that he owes the note, excepting the credits endorsed thereon which are not in dispute, but claims that it was an advancement made by plaintiff's husband, and not by the plaintiff, while the plaintiff testified that the advancement was made to the defendant by her husband for her, so that the defendant could purchase stock for the farm. This question of fact was submitted to the jury, that is, the jurors were instructed that if they found from the evidence that plaintiff was not the owner of the note they must find for the defendant, and their finding for the plaintiff is conclusive.

The plaintiff claims, that all the provisions of the written lease, excepting, the provision relating to the furnishing of the seed, the paying

of the thresh bill, and the division of the grain were in full force, and effect during the years 1926 and 1927, the years that the defendant tilled the land after the expiration of the written contract, and that the changes mentioned do not invalidate the other portions of the written contract in any particular.

2 Thompson on Real Estate, § 982, page 37, states the rule as follows: "It is not essential that the same amount of rent should be paid every year under a yearly tenancy extending over a considerable period of time. As the parties could terminate it altogether, so they can change various terms of the contract without altering the nature or breaking the continuity of the holding. It is equally true that the holding over as a term for years which creates a tenancy from year to year need not be at the same rental as that reserved on lease. A change in the rental is not in itself a new agreement creating an estate for years."

The changes in the contract in the case at bar, all relate to the rent, the furnishing of the seed, the paying of the threshing bill and the amount that each was to receive, and do not alter the nature, or break the continuity of the holding, and under the undisputed facts, during the years 1926 and 1927 the old contract, except as to the rent, was in full force and effect under § 6094, Comp. Laws 1913, which reads as follows:—"If a lessee of real property remains in possession thereof after the expiration of the hiring and the lessor accepts rent from him the parties are presumed to have renewed the hiring on the same terms and for the same time, not exceeding one year."

This section was construed by this court in Wadsworth v. Owens, 21 N. D. 255, 130 N. W. 932, in the case of Herrmann v. Minnekota Elevator Co. 27 N. D. 238, 145 N. W. 821. The court held in both cases, that if the lessee of real property remains in possession after the expiration of the hiring, and the lessor accepts rent from him the parties are presumed to have renewed the hirings on the same terms and for the same time, not exceeding one year, and the rights of the parties are governed by the provisions of the written contract which had expired, but which are in full force and effect from year to year, as long as the parties operate under them.

In Banbury v. Sherin, 4 S. D. 88, 55 N. W. 723, the court said: "The original lease in this case was for a year, at a monthly rental,

·and expired April 1, 1887. Under the provisions of the foregoing section, when the lessee held over into the second year, and the lessor accepted rent,·the lease was presumed to have been renewed for another year, expiring April 1, 1888, and in the same way it was again renewed·April 1, 1889. In each case it was a lease for one year, and the lessee, by holding over, became a tenant or trespasser at the will of the landlord, until the lessor had accepted rent, and when that was done he became tenant for another year. . . . The sections quoted says a new lease is presumed to be made upon the same terms as the preceding one. The rights and liabilities of the parties are the same as though a new lease had actually been made."

"The weight of authority is to the effect that if the previous tenancy was for one or more years, a new tenancy, the existency of which is inferred from circumstances, is presumptively one from year to year." Tiffany, Real Prop. § 73, p. 257.

"One of the most common ways in which a tenancy from year to year originates is for a landlord to allow his tenant for years to hold over after the expiration of the term. In all jurisdictions where the doctrine of tenancy from year to year is recognized, the rule is universal that if a tenant continue in possession after the end·of his term, the landlord may. charge him on the contract as yearly tenant." 2 Thomp. Real Prop. § 947, p. 25.

"The terms of a year to year holding are the same as those of the lease which preceded it in the absence of any agreement changing them. The fact that the tenant agrees to pay an increased rent does not affect the presumption that he holds on all the other terms of the original lease. The presumption of law is that the tenant holds the premises subject to all the covenants contained in the original lease which are applicable to his present situation." 2 Thomp. Real Prop. § 975, p. 28.

In the case at bar, it is undisputed that there was a written contract, that it was modified by changing the written provisions in relation to the furnishing of the seed and the division of the grain, and as thus modified, the lessee operated under the contract for five years. In the fall of the last year he asked the lessor, if she wanted a new contract, she said, no, and he continued to operate the farm without any other contract for the farming years of 1926 and 1927. It is

also undisputed that, there was no division of the grain at the time of the institution of the action, and under and by virtue of the contract, the plaintiff was entitled to the possession of the grain until there was a division, and had the right to take as much of the grain as would on division become the property of the lessee for the payment of money advanced or indebtedness due from the lessee to the lessor.

Appellant specifies as error the following instruction to the jury, viz., "There is no question, but that the land was leased to the defendant, John Arvidson, and one Mr. Mellum, under a written contract in 1920, for a period of five years." This statement by the trial judge is not strictly correct, as both the plaintiff and the defendant testified to the change in the matter of furnishing seed, and a division of the grain, but it was so thoroughly brought out in the trial, and in other instructions by the trial judge that there could be no possible prejudice in the statement. There are other specifications of error relating to the admission of testimony which are without merit. The judgment is affirmed.

BIRDZELL, CHRISTIANSON, NUESSLE, and BURR, JJ., concur.

## On petition for rehearing.

BURKE, Ch. J. In a petition for a rehearing appellant contends that we have overlooked the fact that the defendant Arvidson farmed the land under an oral lease. We have not overlooked the testimony to which appellant called our attention, viz., the testimony of John Arvidson. Ques. "I notice in this instrument that it provides that you should furnish the seed?" Ans. "Yes, but there was a verbal agreement right at the same time that we made the contract." But this is not all of John Arvidson's testimony. He said further. Ques. "You went into possession of this land under this contract didn't you?" Ans. "Under the contract, and the verbal agreement, that they were to furnish the seed and we were to divide the crop equally." Ques. "And you went on the land and remained in possession of the land ever since that time down to the fall of 1927?" Ans. "Yes." Ques. "And you farmed the land under that kind of an agreement down to

the fall of 1927?" He further testified that, "in       of 1925, I asked Mrs. Timm if she wanted another contract, and . ie said, No." The fall of 1925 was the date of the expiration of the written contract, and the fact that when it was about to expire Arvidson went to Mrs. Timm and asked her if she wanted another contract, conclusively shows, that he recognized the written contract as binding.

Appellant further contends, that we overlooked the recent case of Vincent v. Reynolds, 53 N. D. 749, 208 N. W. 158. In this he is also mistaken. The facts in this case are entirely different. The plaintiff in the case of Vincent v. Reynolds, purchased in 1923, a quarter section of land upon which there was an outstanding lease reserving the title in the crops. He knew about this lease and did not claim any interest in the crop for that year. He claimed that in the fall of 1923, he entered into an oral agreement with the tenant, by the terms of which he claimed that the old lease would remain in full force and effect, except, that he reduced the price from $4.50 an acre to $3.75 an acre. The old lease expired on March 4, 1924, and the court said: "It appears, therefore, that when the plaintiff and Hodson agreed that the latter should farm the land in 1924, the old lease was still in force. There was no holding over the term, within the provisions of § 6094, supra, with a resulting renewal of the old lease for another year. Neither does § 5345, supra, have any application for the obvious reason that, when the grant was made to plaintiff, the grantor had transferred all his rights under a lease to another person, and of this transfer the plaintiff had full knowledge. Plaintiff certainly never had the right to treat Hodson as a trespasser. He was on the land pursuant to an agreement, which the new owner said he made with him prior to the expiration of the original lease. He proved such an agreement himself, but, in the view of the trial court, he failed utterly to prove that the terms of the old lease were incorporated in the new. The trial court saw and heard the witnesses. This is not a case triable anew; it is an action at law properly triable to a jury. The findings of the trial court are presumed to be correct, unless clearly opposed to the preponderance of the evidence."

The case at bar is likewise a case at law, which was submitted to a jury with proper instructions, and the evidence shows that there was a written contract in full force and binding upon the parties, except,

the provision relating to the furnishing of seed and the division of grain. The defendant Arvidson testified to it himself, that he operated the land *under the written lease* and the oral agreement in relation to the furnishing of the seed and the division of the grain.

The case of Breher v. Hase, 54 N. D. 87, 208 N. W. 974 is not in point. In that case the court simply held, that the contract for the sale of land did not provide for a lien upon the crop after the date of the expiration of the contract, and, of course, the defendant not being a tenant or lessee, but the purchaser, did not hold over under § 6094, Comp. Laws 1913, and there was no claim made that he did.

It is the further contention of appellant that we have overlooked the fact that the claim of the plaintiff, Lydia Timm, was that she became interested in the note in suit about a year before the trial. The evidence is that the defendant wanted to raise stock on the plaintiff's farm. He did not have the money, the plaintiff did not have the money, and testified, that her husband advanced the money to the defendant for her, and when he took the note, he took it in his own name as he was doing the business. It is plaintiff's contention that the money was advanced for her, and the fact that the husband advanced it without taking any security from the defendant, is a strong corroborative circumstance. If the money was advanced to the defendant for the plaintiff, then it was an indebtedness due the plaintiff from the defendant, and it doesn't make any difference in whose name the note was taken. The evidence was sufficient to go to the jury, and the verdict is conclusive. The petition is denied.

BIRDZELL, CHRISTIANSON, BURR, and NUESSLE, JJ., concur.